IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO. 4:05cr37 |
| JOSEPH BUTLER | ) | |
| | ) | |
| Defendant. | ) | |

**United States' Response in Opposition to
Defendant's Motion for Compassionate Release**

The United States files this response in opposition to Joseph Butler's motion for

compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).  The defendant is currently serving a

360 month sentence at FMC Butner for Conspiracy to Distribute Cocaine and Cocaine Base.  He

seeks early release from prison due to his generalized fear of contracting COVID-19 and his

belief that he has served enough of his sentence. Because the defendant  does not have a medical

condition that qualifies as an "extraordinary and compelling" reason for release, refused the

COVID-19 vaccination and the statutory sentencing factors in 18 U.S.C. § 3553(a) weigh against

release, the Court should deny his motion.

**Background**

**I.**     **Facts.**

The defendant pled guilty on July 12, 2005, to Conspiracy to Distribute Cocaine and

Cocaine Base.  He was sentenced to 360 months incarceration on January 5, 2006. He

subsequently filed for application of the retroactive crack guidelines reduction, but this was

denied on November 2, 2011. He moved for a reduction of sentence based upon amendment 782

to the United States Sentencing Guidelines, this motion was granted on April 20, 2018, and his

sentence was reduced to 324 months.

The defendant next filed for relief under section 404 of the First Step Act on January 10, 2019. This motion was denied on February 15, 2019. This denial was upheld by the Fourth Circuit on July 31, 2019. On November 21, 2019, Butler filed a "Motion for Relief from Final Judgement" which was denied on January 8, 2020. Again, the Fourth Circuit upheld this denial. The defendant successfully filed his Motion for Compassionate Release on June 9, 2021. The United States now responds to this motion.

## II.     Defendant's motion for compassionate release.

On June 9, 2021, the defendant filed a motion for Compassionate Release seeking early release from prison due to his generalized fear of contracting COVID-19 and his belief that he has served enough of his sentence. If released, defendant offers no release plan.

## III.    BOP efforts to mitigate the effects of COVID-19.

The federal Bureau of Prisons ("BOP") has implemented several measures to contain the spread of the virus within prison populations.  In recent months, BOP has made significant progress in distributing and administering vaccines to staff and inmates at its facilities.  BOP has also maintained COVID-19 protocols designed to prevent community spread, including limiting access to prisons, restricting prisoner movement within prisons, requiring screening and testing, providing masks and hand cleaners, and separating ill inmates from the rest of the population. Further, BOP has devoted substantial resources to placing vulnerable inmates in home confinement.

Since December 2020, BOP has been steadily administering COVID-19 vaccines to inmates and staff.  As of July 22, 2021, BOP has administered a total of 202,910 doses of the vaccine at its facilities.  *COVID-19 Vaccine Implementation*, BOP, https://www.bop.gov/coronavirus/.  BOP has been distributing the vaccine consistent with guidance issued by the Centers for Disease Control and Prevention ("CDC").  *COVID-19*

*Vaccine Guidance*, BOP 4 (Mar. 11, 2021),

https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf.  BOP has

offered the vaccine to all staff members.  Becky Sullivan, *All Federal Inmates to Be Offered*

*Vaccine by Mid-May, BOP Director Says*, NPR (Apr. 16, 2021),

https://www.npr.org/2021/04/16/988237102/all-federal-inmates-to-be-offered-vaccine-by-mid-

may-bop-director-says.  By mid-May, BOP expects that all inmates will have the opportunity to

receive the vaccine.  *Id.*

BOP also continues to operate under modified conditions to reduce the spread of

COVID-19 in its facilities.  All inmates and staff have been issued facial coverings to use,

particularly when it is not possible to social distance.  *Correcting Myths and Misinformation*

*About BOP and COVID-19*, BOP (May 6, 2020),

https://www.bop.gov/coronavirus/docs/correcting_myths_and_misinformation_bop_covid19.

pdf.  Common areas are sanitized multiple times per day.  *Id.* at 3.  Additionally, medical staff

screen every newly admitted inmate for COVID-19.  *BOP Modified Operations*, BOP (Nov.

25, 2020), https://www.bop.gov/coronavirus/covid19_status.jsp.  Inmates who are

asymptomatic and test negative are placed in quarantine for 14 days.  *Id.*  Inmates who are

symptomatic and/or test positive are placed in medical isolation.  *Id.*  Medical staff also

conduct rounds and check inmate temperatures at least daily.  *Correcting Myths and*

*Misinformation About BOP and COVID-19*, at 1.

Inmate movements are "limited" to "prevent congregate gathering and maximize social

distancing," with movement "in small numbers" permitted to access the commissary, laundry,

showers, and phones.  *BOP Modified Operations*.  Movement is also still permitted for mental

health and medical care.  *Id.*  Inmates who are transferring between facilities, moving to other

3

correctional jurisdictions, or being released from BOP custody must quarantine for 14 days and test negative before transfer. *Id.* BOP will not transfer or release inmates with active COVID-19 "unless absolutely necessary." *Id.* For immediate releases where the inmate could not quarantine for 14 days, BOP provides a symptom screen, temperature check, and COVID-19 test on the day of departure and notifies the health authorities in the local jurisdiction if necessary. *Id.*

BOP also conducts temperature checks and COVID-19 screening for staff, contractors, and other visitors to its facilities. *Id.* Anyone who registers a temperature of 100.4 degrees Fahrenheit or higher cannot enter the building. *Id.* Staff who exhibit symptoms are sent home. *Correcting Myths and Misinformation About BOP and COVID-19*, at 3.

BOP previously suspended social visits but has since reinstated visits, directing each institution to adopt a visiting plan consistent with its resources, including space. *BOP Modified Operations*. Visits are "non-contact" and must be socially distant, either using physical barriers such as plexiglass or physical distancing. *Id.* Inmates in quarantine or isolation cannot participate in visits. *Id.* Visitors must submit to symptom screening and a temperature check before entering a facility; those who are sick or symptomatic are denied entry. *Id.* Both the inmate and the visitor must wear facial coverings at all times and must perform hand hygiene before and after the visit. *Id.*

Additionally, BOP has expanded the use of home confinement during the COVID-19 pandemic, consistent with directives from the Attorney General. *See* Memorandum from Attorney General to BOP Director (Apr. 3, 2020), https://www.justice.gov/file/1266661/download; Memorandum from Attorney General to BOP Director (Mar. 26, 2020),

https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf.  BOP has been

"reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease

Control and Prevention ("CDC"), to determine which inmates are suitable for home

confinement."  *COVID-19 Home Confinement Information*, BOP,

https://www.bop.gov/coronavirus/ (last visited July 21, 2021).  There are currently 7,293 inmates

on home confinement, and the BOP has placed a total of 28,756 inmates in home confinement

since March 26, 2020.  *Id.*

**IV.     Conditions at the defendant's facility.**

The defendant is currently serving his sentence at FMC Butner a low facility in Butner,

North Carolina.  He has served approximately 15 years or about 50% of his sentence, and his

projected release date is April 14, 2028

FMC Butner has a total of 709 inmates.  As of July 22, 2021, 0 inmates and 0 staff

members at FMC Butner are positive for COVID-19.  134 inmates and 57 staff members

previously tested positive for COVID-19 and have since recovered.  The defendant was offered

the Pfizer-BioNTech vaccine on February 9, 2021 but declined to be vaccinated.


**Argument**

**V.     The Court should deny the defendant's motion because he has not established an
extraordinary and compelling reason for compassionate release.**

The defendant has not established that this Court should exercise its discretion under

§ 3582(c)(1)(A)(i) to grant compassionate release because his lack of medical conditions do not

make him particularly susceptible to COVID-19 and/or he has not established a particularized

risk of contracting COVID-19 at his facility.[1]

---

[1] The defendant properly exhausted his administrative remedies by filing a request for

Section 3582(c)(1)(A) authorizes a court to reduce a term of imprisonment when "extraordinary and compelling reasons warrant such a reduction."  Although the statute "does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release," the Sentencing Commission has "addressed the issue in a policy statement."  *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020).  According to the policy statement, "extraordinary and compelling reasons" may exist based on the defendant's medical condition, age, family circumstances, or other reasons as determined by BOP.  U.S.S.G. § 1B1.13.  If a district court finds that extraordinary and compelling reasons exist, the court may not reduce a sentence before "considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable."  § 3582(c)(1)(A).  The defendant bears the burden of proving that he is entitled to relief under § 3582(c)(1)(A).  *See United States v. Kannell*, 834 F. App'x 566, 567 (11th Cir. 2021) (per curiam); *see also United States v. Kenney*, No. 3:16-cr-143, 2021 WL 399724, at *1 (E.D. Va. Feb. 4, 2021); *United States v. Watson*, No. 1:07-cr-396, 2020 WL 7318269, at *1 (E.D. Va. Dec. 11, 2020).

The Fourth Circuit's recent decision in *McCoy* does not reduce the defendant's burden of establishing an "extraordinary and compelling" reason for relief under § 3582(c)(1)(A).  In *McCoy*, the court held that the policy statement in U.S.S.G. § 1B1.13 is not "applicable" to compassionate release motions brought by defendants under § 3582(c)(1)(A).  981 F.3d at 281–82.  Because § 1B1.13 "was adopted before the First Step Act" and specifically mentions only motions brought by BOP, the court reasoned that the policy statement does not apply to motions brought by defendants.  *Id.* at 282.  Absent an applicable policy statement, district courts should

_____

compassionate release with the warden of FMC Butner on June 11, 2020.  The warden denied that request on April 23, 2021.

6

"make their own independent determinations of what constitutes an 'extraordinary and compelling reason[]' under § 3582(c)(1)(A), as consistent with the statutory language." *Id*. at 284.  The Fourth Circuit noted, however, that § 1B1.13 "remains helpful guidance even when motions are filed by defendants." *Id*. at 282 n.7 (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (observing that "[t]he substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'" and that "a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused")).  Accordingly, the Fourth Circuit has continued to reference § 1B1.13 as a guidepost for compassionate release motions even after *McCoy*.  *See, e.g.*, *United States v. Trotman*, No. 20-6217, 2020 WL 7392287, at *2 (4th Cir. Dec. 17, 2020) (per curiam); *United States v. Adamson*, 831 F. App'x 82, 83 (4th Cir. 2020) (per curiam).  Courts in this district have followed suit.  *See, e.g.*, *United States v. Henry*, No. 3:15cr162, 2021 WL 682069, at *5 (E.D. Va. Feb. 22, 2021); *United States v. Smith*, No. 3:20cr14, 2021 WL 682067, at *3 (E.D. Va. Feb. 22, 2021); *United States v. Nabaya*, No. 3:17cr3, 2021 WL 54361, at *6 (E.D. Va. Jan. 6, 2021); *United States v. Reid*, No. 2:02cr172-7, 2020 WL 7318266, at *2 (E.D. Va. Dec. 10, 2020).

Courts have held that the COVID-19 pandemic, by itself, is not a sufficient basis for compassionate release.  *See, e.g.*, *United States v. Thompson*, No. 20-40381, 2021 WL 37493, at *3 (5th Cir. Jan. 5, 2021) ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release ....."); *see United States v. Miller*, No. 3:16cr121, 2020 WL 4547809, at *5 (E.D. Va. Aug. 6, 2020) (Defendant "cannot rely merely on a fear of contracting COVID-19 as grounds for

compassionate release." (internal quotation marks omitted)). "Indeed, a general fear of contracting COVID-19, without a sufficient basis for that fear, does not provide an extraordinary and compelling reason for a defendant's release." *United States v. Chandler*, No. 3:15mj122( (DJN), 2020 WL 6139945, at *5 (E.D. Va. Oct. 19, 2020). Instead, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *Adamson*, 831 F. App'x at 83 (quoting *Feiling*, 453 F. Supp. 3d at 841); *see United States v. Blevins*, No. 20-7053, 2020 WL 7691726, at *1 (4th Cir. Dec. 28, 2020) (per curiam).

> **A.    The defendant has not demonstrated that he faces a particularized susceptibility to COVID-19.**

The defendant has not established an extraordinary and compelling reason for compassionate release because he has not shown that he faces a "particularized susceptibility" to COVID-19. *Adamson*, 831 F. App'x at 83. He asserts that general susceptibility places him at risk of developing severe symptoms if he contracts the coronavirus. Because he does not suffer from a medical condition that places him at an increased risk of severe illness from COVID-19, and there are no active cases of COVID-19 at his facility, he has not established that he is entitled to relief under § 3582(c)(1)(A).

However, the defendant has not established an extraordinary and compelling reason for compassionate release because he refused to be vaccinated against COVID-19. On February 9, 2021, BOP offered to administer the Pfizer-BioNTech vaccine to the defendant, but he declined. The defendant's "refusal to take preventative measures against COVID-19 substantially undermines his assertion that extraordinary and compelling reasons exist to warrant his release from prison." Order at 5, *United States v. Madison*, No. 2:17-cr-80, ECF No. 88 (E.D. Va. Mar.

19, 2021) (internal quotation marks omitted); *see also United States v. Siegel*, 2021 WL 962491, at *2 (D. Md. Mar. 15, 2021), *appeal docketed*, No. 21-6426 (4th Cir. Mar. 23, 2021) (concluding that compassionate release was "not warranted" where the defendant had "refused to accept vaccination, a more direct means of protecting herself from COVID-19 than full release from prison"); *United States v. King*, No. 16-CR-478-11 (CS), 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) (finding no extraordinary and compelling circumstances where the defendant refused the COVID-19 vaccine); *United States v. McBride*, No. 5:19-CR-7-KDB-DCK-1, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) (same).

According to the CDC, the Pfizer-BioNTech vaccine is 95% effective at preventing illness from COVID-19.  Pfizer-BioNTech *COVID-19 Vaccine Overview and Safety*, CDC (Apr. 5, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/ Pfizer-BioNTech.html.  Although the defendant has the right to decline vaccination, "he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk."  *United States v. Jackson*, No. 15-cr-260(7) (PAM/TNL), 2021 WL 806366, at *2 (D. Minn. Mar. 3, 2021); *see also United States v. Williams*, No. CR-17-1279-1-PHX-DLR, 2021 WL 321904, at *3 (D. Ariz. Feb. 1, 2021) (finding that the defendant's refusal of the vaccine was "inconsistent with his position that he believes he is at increased risk from the virus").  Otherwise, it "would encourage inmates to avoid" precautions "that will help reduce the spread of COVID-19 within the prison system in hopes that a court will find them at risk and release them, defeating the ultimate goal of both the BOP and the courts in helping stem the spread of COVID-19."  *United States v. Feiling*, No. 3:19cr112(DJN), 2020 WL 5047064, at *7 (E.D. Va. Aug. 26, 2020) (finding that the defendant had not established extraordinary and compelling reasons for compassionate release because he

refused BOP's offer to place him in medical isolation in order to preserve his housing assignment); *see also United States v. Austin*, No. 15-20609, 2021 WL 1137987, at *2 (E.D. Mich. Mar. 25, 2021) (denying compassionate release for a defendant who had refused the vaccine, explaining that the court was "exceedingly hesitant to provide prisoners an incentive to *increase* their risk of contracting COVID-19 and developing severe symptoms," a "result" that "would be profoundly counter-productive and would militate against the ameliorative purposes of compassionate release"); *United States v. Lohmeier*, No. 12 CR 1005, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) (ruling that a defendant "cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction"); *United States v. Zambrano*, No. 18-CR-2002-CJW-MAR, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) (finding that "it would be inappropriate to reward" the defendant's "refusal to protect herself" with the COVID-19 vaccine "by granting her release").

Further, the defendant's decision to refuse the vaccine "undermines his argument" that FMC Butner "has not taken sufficient steps to protect him from contracting COVID-19," given that BOP officials allocated doses of the vaccine for the defendant in order to protect him against the risk of future infection. *Feiling*, No. 3:19cr112(DJN), 2020 WL 5047064, at *7. And as vaccination of other inmates and staff progresses, that lowers the defendant's risk of contracting the disease at his facility. *See, e.g.*, *Siegel*, 2021 WL 962491, at *2 (observing that the "health risks" at the defendant's facility "are likely declining" because the facility had begun vaccinating inmates); *Lohmeier*, 2021 WL 365773, at *3 (reasoning that the fact that "other inmates and staff are being vaccinated also lowers [the defendant's] risk exposure").]

The CDC has recognized that the "[r]isk for severe illness with COVID-19 increases with age, with older adults [being] at highest risk." *Older Adults*, CDC (Apr. 16, 2021),

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

However, the defendant's age, by itself, does not "create a materially elevated risk of

hospitalization or death due to COVID-19." *United States v. Lumpkin*, No. 2:12cr192, 2020 WL

7123109, at *2 (E.D. Va. Dec. 4, 2020) (43-year-old defendant was not particularly susceptible

to COVID-19); *see also, e.g.*, *United States v. Dunlap*, No. PJM 01-97, 2020 WL 5096723, at*4

(D. Md. Aug. 28, 2020) ("[W]hile the Court recognizes that risk for severe illness from COVID-

19 increases as one ages, being 55 by itself is not an 'extraordinary and compelling reason' for

release."). In this case, the defendant, a 54-year-old man, has not established that his age puts

him at increased risk for severe illness from COVID-19.

The defendant has not introduced evidence showing that he suffers from any serious

medical condition. Courts consistently have found that defendants who are healthy and taking

no prescribed medications do not face a particularized susceptibility to COVID-19. *See, e.g.*,

*United States v. Doyle*, No. 3:15cr191, 2020 WL 4590517, at *5 & n.11 (E.D. Va. Aug. 10,

2020) (finding that a defendant who was 39 years old, healthy, took "no medications," and

"report[ed] no medical conditions" could not "be considered at an increased risk for severe

illness" under the CDC's guidance); *Dinning v. United States*, Nos. 2:12-cr-84, 2:12-cr-140,

2020 WL 1889361, at *3 (E.D. Va. Apr. 16, 2020) (finding that a defendant who was 55 years

old, had no history of any serious medical conditions, and was not taking any prescribed

medications was not particularly vulnerable to COVID-19).

**B.      The defendant has not demonstrated that he faces a particularized risk of contracting COVID-19 at FMC Butner.**

Even if the Court determines that the defendant suffers from a medical condition that

makes him particularly susceptible to COVID-19, he has not established an "extraordinary and

compelling" reason for compassionate release because he has not shown any "particularized risk

11

of contracting the disease at his prison facility." *Adamson*, 831 F. App'x at 83; *see, e.g.*, *United States v. Evans*, No. 3:00cr63, 2020 WL 5121331, at *4-*5 (E.D. Va. Aug. 31, 2020) (finding that the defendant's underlying medical conditions were "extraordinary and compelling" but that she did not face a particularized risk of contracting COVID-19 at her facility).

Courts have required that a defendant's particularized risk "be supported by evidence of an actual outbreak in his facility, not simply the mere possibility of COVID-19 spreading to his camp." *United States v. Little*, No. 1:10-cr-135, 2020 WL 3442173, at *2 (E.D.Va. June 23, 2020); *see also, e.g.*, *Beahm*, 2020 WL 4514590, at *2. The defendant asserts without evidence that COVID-19 is rampant in BOP

As of July 21, 2021, 0 out of a total 709 inmates and 0 staff members at FMC Butner are positive for COVID-19. *COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited July 21, 2021). The low number of active cases illustrates that the defendant is not at a heightened risk of contracting COVID-19 at his facility. *See, e.g.*, *United States v. Woolridge*, No. 3:09cr156 (DJN), 2021 WL 415131, at *5 (E.D. Va. Feb. 5, 2021) (finding no particularized risk where there were only 8 active cases of COVID-19 among an inmate population of 1,404); *United States v. Wilkins*, No. 7:17-cr-407-JMC-1, 2021 WL 194311, at *3 (D.S.C. Jan. 20, 2021) (finding no particularized risk where there were only 10 active cases at the defendant's facility). Further, 134 inmates and 57 staff members at the facility previously tested positive for COVID-19 and have since recovered. *COVID-19 Cases*, BOP. These figures demonstrate that the number of COVID-19 cases at the facility has been declining, such that the situation at FMC Butner "is improving, not deteriorating." *Day*, 474 F. Supp. 3d (finding no particularized risk where the number of positive cases had "steadily declined since Defendant filed his motion"). Despite defendant's refusal of vaccination, distribution of the vaccine to others at his facility

further minimizes his risk of contracting COVID-19.  *See Woolridge*, 2021 WL 415131, at *5

("[A]s the availability of the COVID-19 vaccine continues to increase in the coming months,

especially for individuals in correctional facilities, the risk posed by COVID-19 will likely

continue to decrease.").

On February 9, 2021, BOP offered to administer the Pfizer-BioNTech vaccine to the

defendant, but he declined. The defendant's "refusal to take preventative measures against

COVID-19 substantially undermines his assertion that extraordinary and compelling reasons

exist to warrant his release from prison."  Order at 5, *United States v. Madison*, No. 2:17-cr-80,

ECF No. 88 (E.D. Va. Mar. 19, 2021) (internal quotation marks omitted); *see also United States

v. Siegel*, 2021 WL 962491, at *2 (D. Md. Mar. 15, 2021), *appeal docketed*, No. 21-6426 (4th

Cir. Mar. 23, 2021) (concluding that compassionate release was "not warranted" where the

defendant had "refused to accept vaccination, a more direct means of protecting herself from

COVID-19 than full release from prison"); *United States v. King*, No. 16-CR-478-11 (CS), 2021

WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) (finding no extraordinary and compelling

circumstances where the defendant refused the COVID-19 vaccine); *United States v. McBride*,

No. 5:19-CR-7-KDB-DCK-1, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) (same).

According to the CDC, the Pfizer-BioNTech vaccine is 95% effective at preventing

illness from COVID-19.  Pfizer-BioNTech *COVID-19 Vaccine Overview and Safety*, CDC (Apr.

5, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/ Pfizer-

BioNTech.html.  Although the defendant has the right to decline vaccination, "he cannot

simultaneously claim that he must be released because of the risk of complications while

refusing a vaccine that could virtually eliminate that risk."  *United States v. Jackson*, No. 15-cr-

260(7) (PAM/TNL), 2021 WL 806366, at *2 (D. Minn. Mar. 3, 2021); *see also United States v.

*Williams*, No. CR-17-1279-1-PHX-DLR, 2021 WL 321904, at *3 (D. Ariz. Feb. 1, 2021)

(finding that the defendant's refusal of the vaccine was "inconsistent with his position that he

believes he is at increased risk from the virus").  Otherwise, it "would encourage inmates to

avoid" precautions "that will help reduce the spread of COVID-19 within the prison system in

hopes that a court will find them at risk and release them, defeating the ultimate goal of both the

BOP and the courts in helping stem the spread of COVID-19."  *United States v. Feiling*, No.

3:19cr112(DJN), 2020 WL 5047064, at *7 (E.D. Va. Aug. 26, 2020) (finding that the defendant

had not established extraordinary and compelling reasons for compassionate release because he

refused BOP's offer to place him in medical isolation in order to preserve his housing

assignment); *see also United States v. Austin*, No. 15-20609, 2021 WL 1137987, at *2 (E.D.

Mich. Mar. 25, 2021) (denying compassionate release for a defendant who had refused the

vaccine, explaining that the court was "exceedingly hesitant to provide prisoners an incentive to

*increase* their risk of contracting COVID-19 and developing severe symptoms," a "result" that

"would be profoundly counter-productive and would militate against the ameliorative purposes

of compassionate release"); *United States v. Lohmeier*, No. 12 CR 1005, 2021 WL 365773, at *2

(N.D. Ill. Feb. 3, 2021) (ruling that a defendant "cannot reasonably expect that prolonging his

risk by declining vaccination will be rewarded with a sentence reduction"); *United States v.

Zambrano*, No. 18-CR-2002-CJW-MAR, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021)

(finding that "it would be inappropriate to reward" the defendant's "refusal to protect herself"

with the COVID-19 vaccine "by granting her release").

　　　　Further, the defendant's decision to refuse the vaccine "undermines his argument" that

FMC Butner "has not taken sufficient steps to protect him from contracting COVID-19," given

that BOP officials allocated doses of the vaccine for the defendant in order to protect him against

14

the risk of future infection.  *Feiling*, No. 3:19cr112(DJN), 2020 WL 5047064, at \*7.  And as

vaccination of other inmates and staff progresses, that lowers the defendant's risk of contracting

the disease at his facility.  *See, e.g.*, *Siegel*, 2021 WL 962491, at \*2 (observing that the "health

risks" at the defendant's facility "are likely declining" because the facility had begun vaccinating

inmates); *Lohmeier*, 2021 WL 365773, at \*3 (reasoning that the fact that "other inmates and staff

are being vaccinated also lowers [the defendant's] risk exposure").

Finally, the defendant failed to offer any release plan.  This denies the Court the ability to

analyze the merits of any post-release living arrangements.  Because the defendant has not

established a particularized risk of contracting COVID-19 at his facility, he is not entitled to

compassionate release under § 3582(c)(1)(A).

## VI.   The Court should deny the defendant's motion because the statutory sentencing factors do not support release.

Even if the Court determines that the defendant has demonstrated an extraordinary and

compelling reason for compassionate release, it should deny the defendant's motion because the

statutory sentencing factors weigh against release.  Section 3582(c)(1)(A) requires a court to

consider the factors set forth in 18 U.S.C. § 3553(a) before reducing a defendant's sentence.

Those factors include "the nature and circumstances of the underlying offense and the history

and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and "the need for the sentence

imposed" "to reflect the seriousness of the offense, [] promote respect for the law, and [] provide

just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to

protect the public from further crimes of the defendant," *id.* § 3553(a)(2).  Courts should also

consider "the kinds of sentences available," *id.* § 3553(a)(3), and "the need to avoid unwarranted

sentence disparities," *id.* § 3553(a)(6).  Additionally, "the Sentencing Commission has

emphasized that a defendant's rehabilitation while incarcerated," by itself, is "insufficient to

warrant a sentence reduction." *Woolridge*, 2021 WL 415131, at *3 (citing U.S.S.G. § 1B1.13 n.3); *see* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for a sentence reduction.).  In this case, the relevant statutory sentencing factors do not support compassionate release.

The seriousness of the defendant's offense weighs heavily against release.  The defendant was engaged in distributing more than 150 kilograms of cocaine and on at least two occasions was in possession of a firearm while dealing. Courts in this district consistently have denied compassionate release based on the seriousness of the defendant's offense.  *Reid*, 2020 WL 7318266, at *3 (finding that the statutory sentencing factors weighed against release where the defendant had "served as a 'manager' in a vast drug-trafficking conspiracy" and "continued his wrongful conduct even after his arrest by directing a co-conspirator to collect drug proceeds"); *see also, e.g.*, *Prater*, 2021 WL 54364, at *6 (finding that a defendant convicted of drug and firearm-related offenses had "proved his willingness to deal drugs on a large scale and to use violence in furtherance of that drug-dealing activity"); *Albury v. United States*, No. 2:19-cr-68, 2020 WL 6779643, at *5 (E.D. Va. Oct. 23, 2020) (finding that the statutory sentencing factors weighed against release where the defendant "was convicted of a large-scale drug trafficking crime that he conducted over the course of five years," "possessed firearms," and "often travelled interstate to purchase and sell drugs").

The defendant's criminal history underscores that the statutory sentencing factors do not support his request for release.  Defendant presents a "serious" risk of recidivism given that he committed this offense after having served seven years in prison for a maiming conviction. *Prater*, 2021 WL 54364, at *6; *see also, e.g.*, *Bryant*, 2020 WL 7497805, at *6 (reasoning that the defendant "present[ed] a recidivism risk, as evidenced by the fact that he violated the

conditions of his pretrial release and consistently failed to comply with drug testing requirements"); *United States v. Booth*, No. 3:15cr56, 2020 WL 6361935, at *4 (E.D. Va. Oct. 29, 2020) (finding that the defendant "present[ed] a danger both to himself and the community" because he had several prior larceny convictions at the time he committed the underlying offense); *Chandler*, 2020 WL 6139945, at *6 (finding that the § 3553(a) factors did not support release where the defendant had an "extensive criminal history, which started at age 15" and included "multiple theft-related offenses" and "several violent offenses"). Moreover, the defendant's crimes have become increasingly serious over time. *See, e.g.*, *Doyle*, 2020 WL 4590517, at *7 (denying compassionate release where the defendant's "criminal history reflect[ed] an escalation in the seriousness of his criminal behavior, ranging from an early conviction for distribution of marijuana to the instant conspiracy to commit robbery").

Compassionate release is not appropriate because the defendant presents a danger to the safety of others and the community. *See* 18 U.S.C. § 3142(g). Further, the defendant "has more than one offense involving firearms, which raises concerns about public safety should he be released." *Harris*, 2020 WL 7646633, at *5; *see also, e.g.*, *Lloyd*, 2020 WL 4501811, at *4 ("Defendant was also attributed with a firearm at sentencing, a fact that further underscore[d] the seriousness of his criminal conduct."). In addition to the use of a firearm during this course of conduct, the defendant was convicted of having sexual relations with a 14 year old when he was 22 years old.

The defendant's "continued disregard for the law shows that he presents a danger to the community and should not be immediately released." *Nabaya*, 2021 WL 54361, at *6 (denying compassionate release where the defendant "claim[ed] sovereign citizenship and generally defie[d] Court orders and the rule of law"); *Albury*, 2020 WL 6779643, at *5 (denying

17

compassionate release based on defendant's "demonstrated history of not only disobeying court rules but also of committing more crimes during his supervised release").  His most recent offense, February 17, 2021, involves using abusive and obscene language. "The need for continued deterrence of such misconduct weighs against" the defendant's request for compassionate release.  *Nabaya*, 2021 WL 54361, at *6.

The defendant asserts that compassionate release is appropriate based on evidence of his rehabilitation while in prison.  Although the defendant's steps toward self-improvement are commendable, courts in this district repeatedly have held that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release.  *United States v. Hill*, No. 3:14cr114, 2020 WL 6049912, at *5 (E.D. Va. Oct. 13, 2020) (quoting 28 U.S.C. § 994(t)); *see Woolridge*, 2021 WL 415131, at *3.  Indeed, "rehabilitation is the *only* circumstance that Congress has singled out as *not* being 'extraordinary and compelling.'"  *United States v. Logan*, No. 97-CR-99(3) (PJS/RLE), 2021 WL 1221481, at *7 (D. Minn. Apr. 1, 2021).  This limitation makes sense because defendants are expected to conduct themselves appropriately and try to better themselves while incarcerated.  *See, e.g.*, *Logan*, 2021 WL 1221481, at *8 ("Prisoners are *supposed* to follow the rules, take classes, work at a job, and otherwise attempt to improve themselves.  That a prisoner does so means that he has met baseline expectations, not that he has done something extraordinary."); *United States v. Martin*, No. 6:06-105-DCR, 2021 WL 134602, at *2 (E.D. Ky. Jan. 13, 2021) ("[G]ood behavior and education, which are expected of incarcerated individuals, do not constitute 'extraordinary and compelling circumstances' that warrant a sentence reduction."); *see also* Order at 6, *United States v. Ahmad*, No. 1:11-cr-554-TSE, ECF No. 75 (E.D. Va. Apr. 8, 2021) (finding that the defendant's coursework did not support compassionate release, reasoning that "[i]t is not

uncommon for a defendant to take educational classes to pass the time in prison").

Consequently, the defendant's efforts at rehabilitation do not outweigh the seriousness of his crime, and his criminal history. *See, e.g.*, *Lloyd*, 2020 WL 4501811, at *4 n.7 ("While the Court commends Defendant for his documented efforts to work toward rehabilitation during his term of incarceration, his good behavior and pursuit of education in an institutional setting is insufficient to tip the scales in his favor based on the consideration of the record as a whole."); *Hill*, 2020 WL 6049912, at *5 ("While Hill's participation in an extensive number of educational and vocational programs [was] commendable," these measures did "not warrant his early release in light of the seriousness of his convictions and the time remaining on his sentence.").

Courts in this district have required the defendant to bear the burden of proving that his release plan will not pose a danger to the public. *See, e.g.*, *Miller*, 2020 WL 4547809, at *6 (finding that the defendant had "not done enough to establish that he [would] not be a danger to society if released" based on his "criminal history, BOP records, and seeming inability to follow court orders, combined with the fact that his proposed release plan [did] not include any plan for ensuring that he [would] follow such orders and rules if granted release"); *Beahm*, 2020 WL 4514590, at *3 ("As the party seeking relief and with no statutory guidance otherwise, Defendant bears the burden to prove that he is entitled to compassionate release."). Here the defendant has offered no release plan.

Because the § 3553(a) factors counsel against relief, the defendant is not entitled to compassionate release.

### Conclusion

The Court should deny the defendant's motion for compassionate release. In the alternative, if the Court determines that the defendant is entitled to relief, the Court should

require the defendant to complete a 14-day quarantine controlled by BOP prior to his release.

Respectfully submitted,

Raj Parekh
Acting United States Attorney


_____/s/_____
Eric M. Hurt
Assistant United States Attorney
Virginia State Bar No.35765
Attorney for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lake Front Commons
Newport News, Virginia 23606
(757) 591-4000 Office
(757) 591-0866 Fax
eric.hurt@usdoj.gov

**Certificate of Service**

I certify that on July 22, 2021, I electronically filed the foregoing response with the Clerk

of Court using the CM/ECF system, which will serve all counsel of record and mailed a copy to:

Joseph Butler
56260-083
FMC Butner
P.O. Box 1600
Butner, NC 27509

By:    _____/s/_____
Eric M. Hurt
Assistant United States Attorney
Virginia State Bar No.35765
Attorney for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lake Front Commons
Newport News, Virginia 23606
(757) 591-4000 Office
(757) 591-0866 Fax
eric.hurt@usdoj.gov